**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20-cr-222 (ABJ) |
| | : | |
| v. | : | |
| | : | |
| DEMETRIUS GREEN, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. For the reasons stated below, the government requests that this Court sentence the defendant, Demetrius Green, to a sentence of incarceration of 222 months (18.5 years), to be followed by three years of supervised release, and $400 as a mandatory special assessment for all counts of conviction. The Sentencing Guidelines range for this defendant, as detailed further below, is 220 to 240 months of incarceration. In light of the fact that the guidelines reflect the defendant's status as a career offender pursuant to USSG §4B1.1, the government is requesting a sentence at the bottom of the career offender Guidelines range.

## I.    FACTUAL BACKGROUND

On January 20, 2020, at approximately 4:45 a.m., Defendant Demetrius Green, a twice convicted felon with several prior gun and drug arrests, stepped onto the back porch of 917 Wahler Place, Southeast, in Washington, D.C., and fired a machinegun into the air. The Metropolitan Police Department ("MPD") quickly responded and knocked on both the back and front door, but the individual inside (who then turned on the bedroom light in the room where Defendant Green's ID cards were found), refused to come out. MPD officers gathered the spent shell casings from the

back porch, and obtained pole camera footage from a camera that had been installed days earlier to monitor suspected drug trafficking and violence in the area. The pole camera captured Defendant Green stepping onto the back porch and firing off a weapon at 4:45 a.m, and then stepping onto the same back porch on at least two occasions later that morning. After reviewing this footage, law enforcement returned that evening with a search warrant.

As the warrant was executed, Defendant Green attempted to run out the back door, but was stopped and arrested. From inside the residence, MPD and the Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF") recovered approximately $30,000 of drugs (including crack cocaine, hydromorphone, and oxycontin), drug paraphernalia, and a machinegun that forensically matched the five spent shell casings that MPD had recovered from the back porch. Defendant Green was the only individual inside the residence. Several of Green's ID cards were found merely feet away from the crack and the machinegun, and Green appeared to be the only person living in what the Government's expert witness, MPD Detective Alvin Cardinal, testified was a quintessential stash house where controlled substances were stored in order to be sold to the public.

On December 14, 2022, after a one week jury trial, the jury convicted defendant Green on four counts: Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and three counts of Unlawful Possession with the Intent to Distribute a Controlled Substance (crack cocaine, hydromorphone, and oxycodone) in violation of 21 U.S.C. §§ 841(a)(1). The jury was unable to reach a verdict on the charge of Using, Carrying and Possessing a Machinegun during a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(B)(ii). Having won convictions on all the pertinent counts (and establishing that Defendant Green possessed both the machinegun and all the drugs in the house), the Government decided to give

Defendant Green yet another break in his lengthy criminal career by dismissing the 924(c) charge, which carries a thirty year mandatory minimum sentence, and proceeding to sentencing.

## II. STATUTORY PENALTIES

Demetrius Green now faces sentencing on one count of unlawful possession of a firearm, and three counts of possession with intent to distribute a controlled substance. On the firearm count, Green faces a maximum term of imprisonment of 10 years, a term of supervised release of not more than three years, and a fine of up to $250,000. On the three controlled substance counts, Green faces a maximum term of imprisonment of 20 years, a term of supervised release of at least three years, and a maximum fine on each count of up to $1,000,000. Green faces a mandatory special assessment of $100 on each count of conviction.

## III. THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The government agrees with the pre-sentence report's calculation of the applicable Guidelines range and the conclusion that the defendant is a career offender under the Guidelines. U.S. Probation has determined, and the Government agrees, that the defendant was at least 18 years old at the time of the instant offense of conviction, the instant offense of conviction is a felony that is a controlled substance offense, and the defendant has at least two prior felony convictions of a controlled substance offense, specifically, Superior Court for the District of Columbia case numbers 2009-CF2-014828 and 2009-CF2-002926. PSR ¶ 56. Accordingly, the defendant is a Career Offender under the Sentencing Guidelines. USSG §4B1.1(a).[1]

---

[1] Should this Court ultimately decide, contrary to the sentencing recommendation of the United States Probation Office, that the defendant should not be sentenced under the career offender guidelines, the government would request the opportunity to further brief the issue, and/or adjust its recommended sentence to within the non-career offender estimated guidelines. If the defendant was not a career offender, the base offense level would be 30, PSR ¶ 41, with a criminal history of IV, PSR ¶ 51, resulting in a Guidelines range of 135-168 months of incarceration.

A "controlled substance offense" is defined in § 4B1.2(b) as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). This "definition contains three parts: (1) 'an offense under federal or state law,' (2) 'punishable by imprisonment for a term exceeding one year,' (3) that 'prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance,' or possession with the intent to do so." *United States v. Lewis*, 58 F.4th 764, 768–71 (3d Cir. 2023) (quoting U.S.S.G. § 4B1.2(b)). Green's prior convictions for possession with intent to distribute PCP both clearly meet this definition: (1) these were offenses under state (District of Columbia) law, (2) each offense is punishable by imprisonment for more than one year, and (3) the DC law prohibits the possession with intent to distribute a controlled substance.

Therefore, as a career offender, the Guidelines dictate that the defendant's total offense level is 32, because the statutory maximum term of imprisonment is 20 years or more, but less than 25 years. USSG §4B1.1(b)(3). The defendant is automatically determined to have a criminal history of Category VI. USSG §4B1.1(b). Based upon this offense level and criminal history category, the Guidelines imprisonment range is 210 to 262 months. However, with regard to Count 1, because the statutorily authorized maximum sentence (10 years) for Count 1 is less than the applicable Guidelines' range, the statutorily authorized sentence *shall* be imposed. USSG §5G1.1(a). Therefore, for Count 1, the Guidelines range for imprisonment becomes 120 months. With regard to Count 2, the sentence may be imposed at any point within the applicable guideline range, provided that the sentence is not greater than the statutorily authorized maximum sentence

(20 years for Counts 3-5). USSG §5G1.1(c). Thus the Guidelines range for Counts 3, 4, and 5 is 210 months to 240 months. Pursuant to USSG §5G1.2(c), the sentences on all counts must run concurrently. PSR, ¶¶ 100-104.

Based on the 3553(a) factors, as described further below, the Government requests the Court sentence the defendant to 120 months for Count One, and 222 months for counts Three, Four, and Five, with sentences to be imposed concurrently, for a total sentence of 222 months (18.5 years). Based on the 3553(a) factors, and as the U.S. Probation Office has determined, there are no grounds for a downward variance in this case.

## V. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

All of the applicable factors set forth in Title 18 United States Code, Section 3553(a), should be considered by this Court.  *See United States v. Gall*, 128 S.Ct. 586 (2007).  These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities.   18 U.S.C. § 3553(a).

1.  The Nature and Circumstances of the Offense

As a three-time convicted felon, Defendant Green operated a stash house in the Washington Highlands area and recklessly fired multiple bullets from machinegun in the middle of the night, without any regard for the safety of the community. Shooting his weapon into the sky at that hour demonstrated the defendant's complete lack of respect for the rule of law, a troubling trait that the defendant has exhibited for his entire adult life. Spraying these bullets around his neighborhood,

with no regard for where they landed, posed a serious danger and risk to the densely populated community clustered around his residence. Rather than contribute to his community in any meaningful way, Defendant Green intimidated it by discharging a machinegun in the middle of the night and making residents feel unsafe. In addition, he possessed with the intent to distribute over $30,000 worth of narcotics (including 4.502 grams of cocaine base; 131.471 grams of oxycodone, and 31.83 grams of hydromorphone). These are highly addictive and dangerous substances that are ruining the lives of so many citizens in the Washington D.C. community. These offenses are serious and destructive, and have a profound impact on the health and safety of the community. Indeed, although the jury hung on the 924(c) machinegun count, Congress viewed the combination of possessing a machinegun in connection with drug trafficking as serious enough to warrant a 30-year mandatory minimum sentence of incarceration for anyone committing such an offense (even a first-time offender). Here, the nature and circumstances of the offense warrant a severe sentence.

2. <u>History and Characteristics of the Defendant</u>

Defendant Green is 33 years old and has led a life of crime. His criminal history has earned him multiple lenient prison sentences, none longer than 30 months of incarceration. Defendant Green has demonstrated a constant disrespect for the law by engaging in bad behavior while in prison, engaging in new criminal conduct, and violating the terms of his supervised release when he had the chance to return to the community and prove he could exist as a member of society. He even defied his conditions of pre-trial release in this case after being given a second chance by the Court. Put simply, Defendant Green has had a lifetime of second chances, and has demonstrated that he has no intention of changing his behavior. Rather, his record indicates that he is a lifetime criminal offender who refuses to change his ways. On the evidence before the Court, there is no

reason to think that Defendant Green would not engage in additional criminal conduct upon his release.

Having only worked two legitimate jobs in his entire life, Defendant Green chose to engage in drug trafficking and gun possession as his profession. PSR ¶ 91. Starting at the age of 18, Defendant Green started trafficking in PCP. On December 9, 2008, Defendant Green was charged with distributing PCP within 1,000 feet of Ferebee Hope Elementary School while already on release for possessing cocaine. Superior Court for the District of Columbia Case No. 2008-CMD-026715, PSR ¶¶ 46, 56. While on release for two pending matters, on February 6, 2009, Defendant Green again sold PCP on the streets of Washington, D.C. Defendant Green ultimately pleaded guilty to both charges and was originally issued lenient, suspended sentences under the Youth Rehabilitation Act (YRA). PSR ¶¶ 46, 47. Sadly, Defendant Green did not rehabilitate. His probation was revoked, his supervised release was revoked, and he was sent back to prison repeatedly as he committed additional criminal acts. *Id.* Even while in prison, Defendant Green demonstrated numerous violations for refusing assignments. *Id.* The Defendant's entire record is littered with instances in which he has failed to follow the law. As recently as 2019, Defendant Green was convicted for unlawful entry where MPD had responded to a call where Defendant Green was a disorderly unwanted guest. Rather than accept responsibility and plead guilty, Defendant Green took the case to trial, lost, and was sentenced to 30 days of incarceration. PSR ¶ 48.

In addition to his above-referenced criminal convictions, Defendant Green has a shockingly long arrest history. The PSR lists at least 16 other arrests. PSR, ¶¶ 54-69. Starting at the age of 16, Defendant Green was arrested and charged with murder and assault with intent to kill while armed after a 13-year old boy was shot and killed and another victim was shot multiple

times, but survived, in a street dispute. The surviving victim described Defendant Green as one of the shooters, but Defendant Green was found not guilty of the offense. PSR ¶¶ 54-70. After being acquitted, rather than running away from criminal activity, Defendant Green surrounded himself with it. At age 18, Defendant Green was arrested for PWID PCP and possession of cocaine. At age 24, Defendant Green had his first arrest for the same charge he was convicted on in this case, possession with intent to distribute a controlled substance and possession of a firearm. PSR ¶ 61. At age 26, Defendant Green was again arrested, this time in possession of two firearms and a large capacity feeding device (an item which was also seized in the current case). PSR ¶ 65. At age 27, Defendant Green was arrested again for PWID controlled substance, possession of a firearm (again with a large capacity feeding device), and resisting arrest. PSR ¶ 69. On this occasion, Defendant Green possessed a firearm, thirty zip lock baggies containing heroin in his pocket, seven zip lock baggies containing heroin on the ground next to him, and $488 in cash. *Id.* A search of the residence revealed a box of ammunition containing eleven rounds, a plastic bag of ammunition containing 20 rounds, a sock containing five loose rounds of ammunition, a magazine containing three rounds of ammunition, one black cell phone, and one pistol. *Id.*

In summary, Defendant Green has multiple drug and firearm arrests and has received lucky breaks time and time again. Defendant Green now finds himself before the Court as a Career Offender, a label he has earned both as a legal definition, as described above, but also as someone who has spent the majority of his life committing criminal offenses. Based on this egregious criminal history (which includes multiple convictions for drug offenses, multiple drug and gun arrests, revocations, violations while on release, and bad behavior while in prison), the Court should sentence defendant Green to the government's requested sentence.

3. <u>Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law</u>

Consideration of the factors set forth in Section 3553(a) leads to the conclusion that a lengthy period of incarceration followed by supervision is warranted in this case. The recommended sentence of 222 months (18.5 years), reflects the seriousness of the offense and will serve to protect the community. This sentence strikes the proper balance between the serious nature of the defendant's actions and his troublesome criminal history on one hand, and also acknowledges that Defendant has not yet been prosecuted federally nor served substantial prison time as a result of his prior troubles with the law.

4. The Need for the Sentence to Afford Adequate Deterrence

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration, as no other form of sentence has worked to reform the defendant's ways or curtail his criminal conduct. The government's hope is that, after lenient jail sentences and several un-papered arrests proved unsuccessful in changing his prior criminality, a 222-month period of incarceration, followed by three years of supervised release, will finally lead the defendant to change his criminal ways and permanently stay away from the criminal justice system upon his release.

## VI. THE IMPORTANCE OF THE GUIDELINES

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity

courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id*. at 101.

## VII. CONCLUSION

Defendant Green is a career offender with a lengthy history of convictions and multiple arrests. None of his prior interactions with the criminal justice system have been able to curb his criminal behavior. His criminal history is simply abysmal, and his record of compliance with punishment other than incarceration is equally lacking. The defendant is deserving of a lengthy sentence that will take into account the seriousness of the offense, the need for just punishment, the threat the defendant poses to the community, and the need for adequate deterrence of this defendant's incessant criminal conduct. Based upon a consideration of all the factors set forth in Title 18, United States Code, Section 3553(a), the government respectfully asks the Court to impose a sentence of incarceration of 222 months (18.5 years), to be followed by three years of supervised release, and $400 as a mandatory special assessment on each count of conviction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

*/s/ David T. Henek*
DAVID T. HENEK
N.Y. Bar No. 5109111
GILEAD LIGHT
D.C. Bar No. 980839

Assistant United States Attorneys
601 D Street, NW
Washington, D.C. 20530

10

david.t.henek@usdoj.gov
202-252-7825
Gilead.light@usdoj.gov
202-252-6880

CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing Memorandum was electronically filed on ECF.

/s/ Gilead Light
Gilead Light
Assistant U.S. Attorney

11