UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20-cr-222 (ABJ) |
| | : | |
| v. | : | |
| | : | |
| DEMETRIUS GREEN, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Supplemental Memorandum in Aid of Sentencing in response to the Court's Order to "respond to the arguments raised in section I.A. of the defendant's memorandum, pp. 8-10, along with any other issues raised in Section I it wishes to address."

**I.    Defendant Green is a Career Offender**

In Part I.A of the Defendant's Memorandum, the Defendant argues that his two prior convictions for distribution of PCP do not categorically qualify as "controlled substance offenses" under § 4B1.2(b) because they include attempted controlled substance offenses. ECF No. 127 at 8. The Defendant points to the D.C. Circuit's opinion in *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018), which held that the definition of "controlled substance offense" does not include inchoate offenses, and goes on to allege that the District of Columbia offense of Distribution of PCP cannot be considered a "controlled substance offense" under the Guidelines because it incorporates the "attempted transfer" of PCP. ECF No. 127 at 10, *citing United States v. Privott*, No. 8:20-cr-240, at 25-29 (D. Md. Nov. 18, 2022). As explained below, this interpretation of the D.C. statute criminalizing the distribution of controlled substances is improper, has not been

1

adopted by the D.C. Circuit, and has in fact been previously rejected by this Court within the last four weeks.

The Defendant's argument relies, primarily, on an improper interpretation of D.C. Code § 48-904.01(a)(1). D.C. law makes it "unlawful for any person knowingly or intentionally to manufacture, distribute, or possess, with intent to manufacture or distribute, a controlled substance." D.C. Code § 48-904.01(a)(1). In turn, "'[d]istribute' means the actual, constructive, or *attempted transfer* from one person to another other than by administering or dispensing of a controlled substance." D.C. Code § 48-901.02(9) (emphasis added). Federal law likewise defines "distribute" to include "attempted transfer." It is "unlawful for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a). "The term 'distribute' means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11). "The terms 'deliver' or 'delivery' mean the actual, constructive, or *attempted transfer* of a controlled substance. . ." 21 U.S.C. § 802(8). Thus, both D.C. and federal law uniformly define the concept of "attempted transfer" of controlled substances.[1]

Thus, when § 4B1.2(b) defines a "controlled substance offense" as an offense under federal or state law prohibiting the "distribution" of a controlled substance, it makes sense to understand

---

[1] By the government's count, 40 states have similar laws defining distribution to include an "attempted transfer." *See* Ala. Code § 20-2-2(6); Alaska Stat. 11.71.900(7); Ariz. Rev. Stat. § 13-3401(7); Ark. Code Ann. § 5-64-101(6); Cal. Health & Safety Code § 11009; Colo. Rev. Stat. § 18-18-102(7); Conn. Gen. Stat. § 21a-240(11); Del. Code Ann. tit. 16, § 4701(9); Fla. Stat. Ann. § 893.02(6); O.C.G.A. § 16-13-21(7); Haw. Rev. Stat. Ann. § 329C-1; Idaho Code § 37-2701(g); 720 Ill. Comp. Stat. Ann. 570/102(h); Iowa Code § 124.101(7); Kan. Stat. Ann. § 65-1626(n); Me. Rev. Stat. tit. 32, § 13702-A(6); Md. Code Ann., Crim. Law § 5-101(i); Mich. Comp. Laws Serv. § 333.7341(1)(a); Miss. Code Ann. § 41-29-105(h); Mo. Rev. Stat. § 195.010(9); Mont. Code Ann. § 50-32-101(8); Neb. Rev. Stat. Ann § 28-401(12); Nev. Rev. Stat. Ann. § 453.051; N.J. Stat. § 24:21-2; N.M. Stat. Ann. § 30-31-2(G); N.Y. Pub. Health Law § 3302(6); N.C. Gen. Stat. § 90-87; N.D. Cent. Code § 19-03.2-01(2); Okla. Stat. tit. 63, § 2-101 (10); Or. Rev. Stat. Ann. § 475.005(8); 35 Pa. Stat. Ann. § 780-102(b); R.I. Gen. Laws Section 21-28-1.02 (12); S.C. Code Ann. § 44-53-110 (10); Tenn. Code Ann. § 39-17-402(6); Tex. Occ. Code § 551.003(13); Utah Code Ann. § 58-37-2(j); Vt. Stat. Ann. tit. 18, § 4201 (34); Va. Code Ann. § 54.1-3401; Wis. Stat. § 961.01(6).

the Guidelines as using the standard legal definition of "distribution" in this context, which includes attempted transfers. *See United States v. Dawson*, 32 F.4th 254, 264 n.11 (3d Cir. 2022) (noting "ubiquity" of such definitions "in state criminal codes," which "would have been doubly ready-to-hand for the Guideline drafters"). And indeed, circuit decisions have repeatedly recognized that such "attempted transfer" definitions indeed qualify as completed distributions, not mere attempted distributions—including a recent Fourth Circuit decision limiting the Fourth Circuit's earlier opinion in *United States v. Campbell* that is relied upon by the Defendant. *See United States v. Groves*, No. 22-4095, 2023 WL 2941415 (4th Cir. Apr. 14, 2023) (interpreting § 841(a)(1)) (distinguishing *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022) (West Virginia statute)). *See also United States v. Booker*, 994 F.3d 591, 595–96 (6th Cir. 2021) (§ 841(a)(1)); *United States v. Penn*, 63 F.4th 1305, 1312–17 (11th Cir. 2023) (§ 841(a)(1) and Florida statute); *Dawson*, 32 F.4th at 259 (Pennsylvania statute); *United States v. Thomas*, 969 F.3d 583, 584–85 (6th Cir. 2020) (Michigan statute); *United States v. Garth*, 965 F.3d 493, 496–98 (6th Cir. 2020) (Tennessee statute).

As those decisions explain, there are many reasons to understand "distribution" as including "attempted transfers." To begin, that understanding matches dictionary "definitions of the salient terms in the precise, relevant context":

> "Distribution" means "giving out or division among a number, sharing or parceling out, allotting, dispensing, apportioning." *Black's Law Dictionary* 475 (6th ed. 1990); see also *Oxford English Dictionary* (2d ed. 1989) ("The action of dividing and dealing out or bestowing in portions among a number of recipients; apportionment, allotment."). Significantly, the *Black's Law Dictionary* edition closest in time to the adoption of § 4B1.2(b)'s current form provided definitions of salient terms *particularized to the criminal drug law context*; in that sense, "a person 'distributes' a dangerous drug when he sells, transfers, gives or *delivers* to another . . . ." *Black's Law Dictionary* 475 (6th ed. 1990) (emphasis added). "In the context of illegal transfer of drugs, 'deliver' means the actual, constructive, or *attempted transfer* from one person to another of a controlled substance." *Black's Law Dictionary* 429 (6th ed. 1990) (emphasis added); *see also Black's Law*

3

*Dictionary* (5th ed. 1981) (same).

*Dawson*, 32 F.4th at 261–62. Moreover, the dictionary definition is consistent with ordinary usage:

> Consider a drug dealer who apportions his 'stash' into labeled packages, drives them to the local Post Office, and mails them out to buyers. Even if the packages are soon intercepted by Postal Inspectors, the dealer has already "distributed" the packages—by mailing them, he has "attempted transfer" to the buyers. Or, take a mid-level drug captain who places allotments of drugs at pre-arranged locations for collection by street-level dealers. He has "distributed" the drugs, even if the Police discover the parcels before the transferee dealers do—again, a person can engage in drug "distribution" by attempting to transfer drugs. Likewise, when Police conduct a "buy-bust" operation in which a dealer is arrested before the drugs are finally handed over, the dealer engaged in the "distribution" of those drugs by attempting to transfer them

*Id.* at 262. The Guidelines drafting history likewise supports that interpretation. *See id.* at 263–65. Indeed, given that § 994(h) requires career-offender status based on multiple convictions for "an offense described in section 401 of the Controlled Substances Act," interpreting § 4B1.2(b) "distribution" to exclude attempted transfers would mean that "the Commission has flouted Congress's clear command for more than three decades" by failing to include even the required federal crimes in § 4B1.2(b)'s definition. *Dawson*, 32 F.4th at 264–66. "Worse, it would mean embracing the absurd proposition that § 841—marked out by Congress as *the* paradigmatic controlled substance statute—is *not* categorically a controlled substance offense under the Guidelines." *Id.* at 265.[2] In short, "[a]ll the authority points in the contrary direction: the Guidelines category of 'distribution' offenses includes prohibitions on the 'attempted transfer' of drugs." *Id.* at 266.

Finally, both D.C. law and federal law have entirely separate statutes which specifically

---

[2] This Court recently echoed this same rationale when considering an identical issue in the case of *United States v. Denzel Boyd*, 19-cr-333 (ABJ). *See Exhibit 1, Boyd* Transcript of Proceedings at 10-14 (May 3, 2023). In that case, the Court was similarly asked to find that prior convictions for distribution and possession with intent to distribute controlled substances under D.C. law did not qualify as controlled substance offenses under the categorical approach. This Court ultimately disagreed with the defendant in that case, ruling that distribution of controlled substances under D.C. law qualified as a controlled substance offense within the meaning of the Guidelines. *Id.*

criminalize attempted drug trafficking. 21 U.S.C. § 846; D.C. Code § 48-904.09. In other words, the actual inchoate crime is provided for in a separate statute. This fact is fatal to the Defendant's reliance on *Campbell,* because, as the Fourth Circuit pointed out in *Groves,* the *Campbell* decision hinged on an analysis of a state statutory scheme that did "not criminalize attempt offenses separately from completed drug distribution offenses." 2023 WL 2941415, at *6. Where such a separate attempt offense does exist, the analysis utilized by *Campbell* would render the separate statute superfluous, thereby creating a problem with the suggested approach. *Groves* thus limited *Campbell* to situations where, unlike in the District of Columbia, there is no existing attempt statute on the books. *Id.* In addition, the government notes that *Campbell* did not appear to recognize that federal law (and most state laws) defines "distribution" to include "attempted transfer"—it seemed to think that West Virginia was unique in including attempted transfers.

For these reasons, and for the reasons explained in the Government's Memorandum in Aid of Sentencing, ECF No. 126, this Court should find that the Defendant's convictions under District of Columbia law for Distribution of PCP constitute "controlled substance offenses" for purposes of 4B1.2(b).[3]

## II. There is no basis for a substantial departure or variance

The Defendant should not be the beneficiary of either a downward departure or a variance in this case because his criminal history, which includes multiple instances of criminal conduct

---

[3] The government has recently acquiesced to Supreme Court review in *Jackson v. United States*, No. 22-6640, on the question "[w]hether the classification of a prior state conviction as a 'serious drug offense' under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. 924(e)(2)(A)(ii), depends on the federal controlled-substance schedules in effect at the time of the defendant's prior state crime, the time of the federal offense for which he is being sentenced, or the time of his federal sentencing." Unlike the Guidelines definition of a "controlled substance offense" in § 4B1.2(b), however, ACCA expressly cross-reference the definition of a "controlled substance" from federal law, defining a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance *(as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))*." 18 U.S.C.A. § 924(e)(2)(A)(ii) (emphasis added). It is therefore unlikely that any decision in *Jackson* would bear on the Guidelines issue presented here.

beyond the two convictions for Distribution of Controlled Substances, shows that the defendant has had multiple opportunities to prove he can refrain from possessing firearms and trafficking narcotics, and he has consistently failed to do so. If the Defendant's only interactions with the criminal justice system consisted of his two felony convictions from 2009, then perhaps he would be entitled to the departure and/or variance he requests. But these two convictions alone do not come close to accurately reflecting the Defendant's history. This history is detailed in the pre-sentence report (PSR ¶¶ 45-72) and summarized in the Government's Memorandum in Aid of Sentencing (ECF No. 126 at 6-8). The Defendant's record of trafficking narcotics, failing to follow court orders while on release, and being arrested 16 times, should disqualify him from receiving either a departure or a variance. After being arrested again at age 24 for distributing narcotics, again at age 26 in the possession of two firearms, and yet again at age 27 in possession of distribution amounts of narcotics and another firearm on his person, the Defendant's assertion that the Court should only consider the teenage conduct that resulted in conviction defies all logic, and is not supported by the law.

With regard to the Defendant's request for a departure, it is worth noting that two of the three cases he relies upon pre-date the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), which rendered the Sentencing Guidelines voluntary and thus rendered older principles governing departures "obsolete." *United States v. Johnson,* 427 F. 3d 423, 426 (7th Cir. 2005). As the *Johnson* court points out, sentencing courts should be primarily concerned with "the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory." *Id.* citing *United States v. Castro-Juarez*, 425 F.3d 430, 432 (7th Cir.2005) ("the question ... is ultimately the reasonableness of the sentence the district court imposed, not

the court's application of a guideline authorizing an upward departure"). In the third case, *U.S. v. Lamb*, 214 F. App'x 908 (11th Cir. 2007), the trial court declined to disregard the career offender enhancement and expressly considered, and properly calculated, the defendant's advisory Guidelines range. *Id. at 917-919*. This Court should take the same approach here.

With regard to the Defendant's request for a variance, the trial court in *Lamb* gave the defendant a sentence of 181 months of incarceration, a sentence it found more reasonable than the 420-month minimum sentence called for by the Guidelines. *Id.* at 918. Were the Defendant's guidelines in this case similarly high, then perhaps a downward variance would be warranted. Here, as a career offender, the Defendant is facing a Guidelines range of 210-240 months of incarceration, one half of the range that was facing the defendant in *Lamb.* But unlike defendant Lamb*,* the Defendant in this case has only a limited record of employment, and has, for the past decade plus, engaged in the trafficking of narcotics and firearms on multiple occasions throughout his 20's. As the pre-sentence report duly notes, probation has not identified any factors that may warrant a variance from the applicable guideline range based on the factors outlined in 18 USC § 3553(a). PSR ¶ 134. The Defendant is thus not entitled to a variance, and the government's requested sentence is both reasonable and appropriate for this Defendant.

Based upon a consideration of all the factors set forth in Title 18, United States Code, Section 3553(a), the government respectfully asks the Court to impose a sentence of incarceration of 222 months (18.5 years), to be followed by three years of supervised release, and $400 as a mandatory special assessment on each count of conviction.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

>  */s/ David T. Henek*
> DAVID T. HENEK
> N.Y. Bar No. 5109111
> GILEAD LIGHT
> D.C. Bar No. 980839
>
> Assistant United States Attorneys
> 601 D Street, NW
> Washington, D.C. 20530
> david.t.henek@usdoj.gov
> 202-252-7825
> Gilead.light@usdoj.gov
> 202-252-6880

CERTIFICATE OF SERVICE

    I hereby certify that on this date, a copy of the foregoing Memorandum was electronically filed on ECF.

>  */s/ Gilead Light*
> Gilead Light
> Assistant U.S. Attorney